COMMONWEALTH *vs.* JOHN A. TIRELLA.

Suffolk. April 7, 1969. — June 25, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Narcotic Drugs. Constitutional Law,* Due process of law, Freedom of association, Cruel and unusual punishment, Narcotic drugs. *Words,* "In the company of."

The phrase "in the company of a person" in G. L. c. 94, § 213A, as amended through St. 1960, c. 204, § 2, penalizing "whoever is in the company of a person, knowing that said person is illegally in possession of a narcotic drug," denotes an acquiescent, substantial association of an alleged violator of the statute with another who he knows is in illegal possession of a narcotic drug, coupled with an absence of any justification or excuse [273–274]; so interpreted, the statute is not unconstitutionally vague, and does not violate any right of free association, or impose a cruel and unusual punishment, or create any conclusive presumption of guilt of violation of the statute itself or of commission of any other offence [274–275]. SPALDING, J., dissenting, with whom WHITTEMORE and REARDON, JJ., joined.

At the trial of a complaint for having been "in the company of" the operator of an automobile knowing that the operator was illegally in the possession of heroin, in violation of G. L. c. 94, § 213A, as amended through St. 1960, c. 204, § 2, evidence that the defendant was in the back seat of the automobile when it stopped at a street corner and one standing there walked up to the automobile and received money from the operator, who received in return several white, glassine bags containing heroin, and that the defendant leaned over the front seat and observed the transaction and remained in the automobile, warranted a finding that he was guilty. [276]

COMPLAINT filed in the Municipal Court of the City of Boston on November 27, 1967.

Upon appeal to the Superior Court, a motion to dismiss was heard by *Fairhurst,* J., and the case was tried before him.

*Ronald J. Chisholm (Gerard F. Schaefer* with him) for the defendant.

*William J. Doyle,* Assistant District Attorney *(James J. Gillis, Jr.,* Legal Assistant to the District Attorney, with him), for the Commonwealth.

CUTTER, J.  Tirella was convicted under a complaint charging him with being in the company of Michael J. Barry, knowing that Barry was illegally in the possession of heroin.  The case was tried under G. L. c. 278, §§ 33A–33G. Tirella appealed.  He presses only two assignments of error, viz. that the judge erred in denying (1) his motion to dismiss, and (2) his motion for a directed verdict.

The charge arose under the second clause of G. L. c. 94, § 213A (as amended through St. 1960, c. 204, § 2).  This section reads in part, "[A] Whoever is present where a narcotic drug is illegally kept or deposited, or [B] *whoever is in the company of a person, knowing that said person is illegally in possession of a narcotic drug* . . . may be arrested . . . and . . . punished by imprisonment in the state prison for not more than five years, or by imprisonment in a jail . . . for not more than two years or by a fine . . . '' (emphasis supplied).[1]

On November 25, 1967, Officer Simmons of the Boston police narcotics unit went to a building opposite the corner of West Canton Street and Tremont Street.  With binoculars he observed Juan Perez, known to him, standing on the ·corner.  An automobile containing three people stopped. Perez walked to the passenger side of the automobile.  The driver and a passenger were in the front seat.  Tirella (recognized by Officer Simmons) was in the back seat.  The driver, later identified as Barry, passed money through the window on the passenger side to Perez.  In return he received several white, glassine bags.  Tirella leaned over the front seat and observed the transaction, which lasted half a minute.

Officer Simmons, by using a "walkie-talkie" radio, spoke with other officers.  The automobile was stopped by Officer John J. Driscoll several blocks away.  After one passenger

---

[1] In § 213A, as quoted, the letters in brackets are inserted for convenient reference to the clauses immediately following such letters, respectively.  The section was largely rewritten by the 1960 amendment.  As inserted by St. 1957, c. 660, § 1, § 213A merely authorized arrest without a warrant of a person "present" where narcotics are kept, or who "is knowingly in the company" of a person illegally in the possession of a narcotic drug."

got out, Officer Driscoll saw five glassine bags on the front seat. The bags contained heroin.

1. Tirella contends that the italicized portion of § 213A (the second clause following [B] in the section as set out above) is unconstitutional on the grounds (a) that it is "vague and indefinite," (b) that it constitutes cruel and unusual punishment, (c) that it "excludes the element of intent" by punishing mere companionship, and (d) that it "interferes with the right of freedom of association." The validity of these contentions depends upon the proper interpretation of § 213A. We must sustain the statute if it has a proper public purpose in connection with suppression of the narcotics evil and if it attempts to achieve that purpose in a reasonable manner. We also, so far as possible, must interpret § 213A in a manner which avoids doubts concerning its constitutionality. See *Opinion of the Justices,* 341 Mass. 760, 785.

2. In *Commonwealth* v. *Buckley,* 354 Mass. 508, we considered the first clause of § 213A (following [A] in the section as quoted above) and its legislative history.[2] We there held (at pp. 509–513) that the first clause of § 213A could not be read as a "public welfare" statute (cf. *Commonwealth* v. *Murphy,* 342 Mass. 393) requiring for conviction no knowledge of the facts which constituted the offence. It was decided that, to establish guilt (under the first clause), the accused must be shown to have been present in a reasonably restricted place in which he knew a narcotic drug was "illegally kept or deposited." No similar problem concerning knowledge arises under the second clause of § 213A for the second clause expressly requires a showing of knowledge.

The meaning of the phrase "in the company of a person" in the second clause of § 213A requires a correlatively

---

[2] The legislative history of § 213A is not informative. See the *Buckley* case, at p. 510, fn. 2. The 1957 form of the section may have been based on 1954 House Doc. No. 2390 which mentions this type of provision only at pp. 11–12 by a vague reference to G. L. (Ter. Ed.) c. 94, § 214, as amended through St. 1943, c. 357, which subjected persons present where drugs were found pursuant to a search warrant to a substantial fine or one year sentence or both. The 1960 amendment is based on 1960 House Bill No. 2490, p. 2. See 1960 House Journal, p. 803.

strict interpretation. We think that for conviction under it there must be proof of more than that the defendant merely was found in the same place with a person known by the defendant to possess narcotics. As the trial judge properly suggested in his charge, the words "in the company of" imply "something that smacks of fellowship . . . [or] companionship, friendly intercourse, and the like." Coupled with the requirement (in the second clause) of knowledge of the illegal possession of a narcotic by the companion, the words import (a) acquiescent association with another, known to possess narcotics, and (b) an absence of prompt and adequate objection by the defendant to the illegal possession. A violation of the second clause of § 213A is made out by proof that the defendant had more than casual or momentary association with another, with knowledge of the latter's illegal possession, unless the defendant shows facts constituting justification or excuse (as, for example, inability to withdraw after acquiring knowledge of possession, or reasonable cause for remaining, such as that he was a relative, priest, or doctor attempting to discourage continued violation or, possibly, that other exculpatory circumstances existed).

We consider Tirella's constitutional contentions in the light of this interpretation of § 213A. These contentions seem to us to be without merit.

3. The statute is not unconstitutionally vague. The phrase "in the company of" is definite enough to permit men of common intelligence to know what it means, as referring to one associating with a known possessor of narcotic drugs. We think it has a more limited and specific meaning, as interpreted in part 2 of this opinion, than the companion phrase "[w]hoever is present" found in the first clause (following [A] in the section as quoted). That phrase, in the *Buckley* case, 354 Mass. 508, 513, we held not to be void for vagueness.

4. The holdings in the *Buckley* case (354 Mass. 508, 513) that the first clause of § 213A does not violate the right of free association or impose a cruel and unusual punishment

are equally applicable to the second clause. We think that the Legislature may lawfully proscribe any substantial association with one illegally in possession of narcotics as a method of discouraging that serious evil and achieving social rejection of the illegal possessor, thus depriving him of any encouragement which may be given by acquiescent companionship. This is not guilt by association of some offence other than the act of association itself. Cf. *Commonwealth* v. *Fancy*, 349 Mass. 196, 200. The offence under § 213A is the association with the known possessor. Cf. *United States* v. *Romano*, 382 U. S. 136, 144.

5. Section 213A, as we interpret it, does not impose any conclusive presumption of guilt. An accused person (as has been suggested above) may explain his being in company with a possessor by showing, if he can, facts constituting justification or excuse, involving no participation or acquiescence in the violation. Of course, being in the company of a known possessor of narcotics may indicate that an accused himself is engaged in some more direct narcotics activity. Section 213A, however, does not require, or provide for, any presumption or inference of other narcotics activity.

The offence, as we have said, consists merely of the acquiescent association with the possessor. The situation thus is not like that discussed in *Tot* v. *United States*, 319 U. S. 463, 466–469. See *Manley* v. *Georgia*, 279 U. S. 1, 4–7; *Colon-Rosich* v. *People of Puerto Rico*, 256 F. 2d 393, 397–398 (1st Cir.); note, 56 Harv. L. Rev. 1324, 1325–1326. Cf. *Commonwealth* v. *Wilbur*, 353 Mass. 376, 384–385. Also, because § 213A creates no conclusive presumption of guilt of any other offences, the decision in *Seattle* v. *Ross*, 54 Wash. 2d 655, has no application.

6. In practical application, proof of association with one known by a defendant to possess narcotics illegally will warrant a conviction under § 213A. A person accused under that section, however, may present evidence (which, of course, those deciding the facts are not required to believe) tending to show that his presence with the possessor

did not in fact amount to being "in . . . company" with him. The ultimate burden of persuasion that there has been illegal companionship under § 213A rests on the Commonwealth. See *Commonwealth* v. *Freeman,* 354 Mass. 685, 688, where relevant authorities are collected in fn. 3.[3]

7. The trial judge correctly refused to direct a verdict for Tirella. The evidence permitted the inference that Tirella, while in the automobile, knew that Barry had received the glassine bags containing heroin. No testimony tended to explain Tirella's presence or to show that he had any justification or excuse for remaining in the automobile. There was sufficient evidence that Tirella was "in the company of" Barry.

*Judgment affirmed.*

SPALDING, J. (dissenting, with whom Whittemore and Reardon, JJ. join). That the traffic in narcotics is an evil which the State may take strong measures to suppress is not to be doubted. But such measures, however laudable in purpose, must not transcend constitutional limits. I am of opinion that the portion of the statute under consideration transcends those limits and that the defendant's motion to dismiss should have been granted.

The statute creates a felony punishable by imprisonment up to five years if one "is in the company of a person, knowing that said person is illegally in possession of a narcotic drug." To make this drastic provision less vulnerable to constitutional attack, the majority have read into it certain exculpatory provisions.[1] Under the majority's view the

---

[3] See especially *Sagansky* v. *United States,* 358 F. 2d 195, 201–203 (1st Cir.), cert. den. 385 U. S. 816; Am. Law Inst., Model Penal Code (Tent. draft No. 4, 1955), § 1.13 (2) and (3), p. 7, and comment, pp. 108–118, and (Proposed Official Draft, 1962), § 1.12 (2), p. 20. See also Model Penal Code Tent. draft No. 2, 1954), § 206.63, p. 136.

[1] In the absence of these exculpatory provisions, the statute would in effect create a conclusive presumption that one who is knowingly in the company of a person illegally possessing narcotics is in some way assisting or aiding that person in his violation of the law. Such a presumption would be unreasonable and therefore unconstitutional. The Legislature does not have the power "to declare an individual guilty or presumptively guilty of a crime." *McFarland* v. *American Sugar Ref. Co.* 241 U. S. 79, 86. *Tot* v. *United States,* 319 U. S. 463, 466–469. See *Seattle* v. *Ross,* 54 Wash. 2d 655.

clause under consideration imports "(a) acquiescent association with another, known to possess narcotics, and (b) an absence of prompt and adequate objection by the defendant to the illegal possession. A violation of [this clause] is made out by proof that the defendant had more than casual or momentary association with another, with knowledge of the latter's illegal possession, unless the defendant shows facts constituting justification or excuse (as, for example, inability to withdraw after acquiring knowledge of possession, or reasonable cause for remaining, such as that he was a relative, priest, or doctor attempting to discourage continued violation or, possibly, that other exculpatory circumstances existed)."

In answering the defendant's argument that the statute violates his right of free association, the majority state that the statute is designed to discourage the possessor of narcotics by punishing his companions, thus in effect ostracizing the possessor. I seriously doubt the constitutionality of a statute which attempts to punish the possessor by imprisoning his companions. The majority opinion also states that this is not guilt by association because it is the association itself that is punished. With deference, I find this to be a distinction without a difference. It seems to me that a statute so designed would be a classic example of guilt by association, a doctrine expressly repudiated by this court in *Commonwealth* v. *Fancy,* 349 Mass. 196, 200. See *Uphaus* v. *Wyman,* 360 U. S. 72, 79.

But I do not rest my dissent on this ground because I cannot accept the majority's rationale as to the statute's purpose. The statute, I submit, was aimed not at the possessor but at his companions. It is a dragnet statute which permits the arrest and conviction of persons (found in the company of a possessor of narcotics) who are suspected of having also illegally possessed or otherwise dealt with narcotics, but cannot be proved to have done so. Doubtless the statute brings to book many who have in fact violated the narcotic laws, but it also brings within its sweep persons who have neither committed nor intended to commit such

a violation. For example, a college student could be convicted under the statute if he merely continued to reside with a roommate who he knew illegally possessed marihuana. It is difficult to see how such conduct can be classified as criminal. "There can be no doubt that a State may punish one for an attempt to commit a crime. But conduct which falls short of that . . . has never been punishable." *Alegata* v. *Commonwealth*, 353 Mass. 287, 301. Paraphrasing what is said in the *Alegata* case, "It is hard to see how suspicion of [a violation of the narcotic laws] . . . can transform otherwise innocent behavior into a crime. Suspicion, which is an inadequate ground for arrest, is no more satisfactory as a basis for punishment." P. 292. In my view, the challenged portion of § 213A is an invalid exercise of the police power and void on its face as repugnant to the due process clause of the Fourteenth Amendment and to art. 12 of our Declaration of Rights in that it seeks to make criminal conduct which cannot fairly be classed as such. See *Alegata* v. *Commonwealth*, 353 Mass. 287, 297.

I think that the statute also is invalid on the ground of vagueness. Under the statute, as construed by the majority, a defendant may not be convicted if he "shows facts constituting justification or excuse (as, for example, inability to withdraw after acquiring knowledge of possession, or reasonable cause for remaining, such as that he was a relative, priest, or doctor attempting to discourage continued violation or, possibly, that other exculpatory circumstances existed.)" Under this construction it is difficult to say with any degree of certainty what the statute permits and what it forbids. A "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally* v. *General Constr. Co.* 269 U. S. 385, 391. *Commonwealth* v. *Slome*, 321 Mass. 713, 715. *Commonwealth* v. *Carpenter*, 325 Mass. 519, 521. *Alegata* v. *Commonwealth*, 353 Mass. 287, 293.

I am not so naive as to suppose that the defendant in the

case at bar was a nonparticipating dupe whose involvement consisted merely of innocent companionship. But the extent of his involvement is not important. The statute is challenged as unconstitutional on its face. "If on its face the challenged provision is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it. . . . It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression." *Lanzetta* v. *New Jersey*, 306 U. S. 451, 453.