381 So.2d 312 (1980)
Margaret M. DENNIS, a Widow, Melvin A. Fisher, Estelle W. Slater, Alvin DeLones, Fred Slagel, and Charles Walker, Appellants,
v.
The CITY OF KEY WEST, Florida, a Municipal Corporation and the Key West Port and Transit Authority, a Board Established by the City of Key West, Florida, Appellees.
No. 79-738.
District Court of Appeal of Florida, Third District.
March 18, 1980.
*313 Edward B. Johnson, Jr., Key West, for appellants.
Feldman, Eden & Allen and Joseph B. Allen III, Key West, for appellees.
Before PEARSON and SCHWARTZ, JJ. and EZELL, BOYCE F., Jr. (Ret.), Associate Judge.
EZELL, Associate Judge.
Margaret M. Dennis and several others,[1] who all lived aboard vessels moored the Key West shoreline, appeal the final declaratory judgment wherein the trial court held a series of ordinances to be valid and determined that, pursuant to these ordinances, the Key West Port and Transit Authority[2] could require the appellants herein to remove their houseboats. Preliminarily we note that jurisdiction to review decisions concerning the validity of ordinances is properly vested in this court, Armstrong v. City of Tampa, 106 So.2d 407 (Fla. 1958), and we reverse.
Since 1957, Margaret Dennis has lived aboard her houseboat off the coast of Key West. The boat, as are those of the other appellants who have become Mrs. Dennis' neighbors, are moored to pilings driven into the sea bottom and tied up to a bulkhead which was built in the tidal waters to protect the beaches from erosion due to wave action. The boats of Mrs. Dennis and her neighbors are supplied with electricity by the City Electric Company and with water by the Florida Aqueduct Authority. It is these boats which the Key West Port and Transit Authority is attempting to have removed.
Until 1970, the territorial and jurisdictional limits of the City of Key West were formed by the physical boundaries of the island itself. Those waters and submerged lands encircling the key were considered the territory of the State of Florida. In that year, however, the Florida legislature passed a special act ["authorizing the City of Key West] to exercise its police powers and jurisdiction extending three hundred (300) feet into the tidal waters adjacent to its corporate limits ..." Ch. 70-762, § 2, Laws of Fla. These powers were extended only for purposes of the prevention of crime, the abatement of nuisances, the regulation of zoning and the enforcement of sanitation laws and regulations. Ch. 70-762, § 2, Laws of Fla. Thus, in 1970, the City of Key West acquired the right to exercise its police powers over those tidal waters where Dennis and her neighbors had tied up their boats.
The City then passed an ordinance creating the Key West Transit Authority and vested it with the "full power and authority to operate, control and manage any and all transportation and port systems and facilities acquired by the City". Key West, Florida, Ordinance 72-23 (June 5, 1972). A second ordinance, passed the following year, gave the Authority the power to control all watercraft within the jurisdiction of the City. Key West, Florida, Ordinance 73-19 (June 18, 1972). Two particular sections of this ordinance were of special consequence in the trial court. The first of these provisions, Ord. 73-19, § 8-9d, made it a violation to moor or dock any watercraft without a permit; the second made it "unlawful for any person or persons to sleep or live aboard watercraft docked or moored within the jurisdiction ... except watercraft equipped with marine sanitation devices that meet State and Federal waste facility requirements ..." (Emphasis supplied). Ord. 73-19, § 8-12. Under the *314 auspices of this ordinance, the Authority served Mrs. Dennis and her neighbors with notices to remove their vessels.
Mrs. Dennis and the others challenged these efforts by an action for declaratory and injunctive relief. Although the previously discussed ordinances were very much in contention in the trial court and were, in fact, briefed for the benefit of this court, the parties have conceded that, if the Port and Transit Authority does have the ability to order the removal of the houseboats, it must flow from Ordinance 75-8 and the ability of the Authority to enforce such a regulation. Key West, Florida, Ordinance 75-8 (May 5, 1975) provides in pertinent part:
"Section 1. No house car, camp car, vehicle or vessel or part of vehicle or vessel used for a residence, live aboard facility, live aboard vessel, or for human habitation by whatever name known ... shall be kept on public or private property within the jurisdictional limits of the City or within Three Hundred (300) feet of the corporate limits of the City while being used as a residence, live aboard facility, live aboard vessel or for human habitation except if kept within a licensed trailer park or other area which has been designated by the City . ..
"Section 2. It shall be unlawful for any private or public utility, person or corporation to furnish water, electricity or other services to any house car, camp car, camper or vessel which is being used in violation of this Ordinance.
"Section 3. It shall be unlawful and under no circumstances shall any vehicle or vessel described in Section 1 of this Ordinance be used a living or sleeping quarters within the jurisdictional limits of the City of Key West or within Three Hundred (300) feet of the corporate limits, except as provided herein.
"Section 4. All vessels used for live aboard or for human habitation shall be equipped with an approved marine sanitation device as provided herein... .
"Section 5. This Ordinance shall not apply to any vessel which is kept within or tied up to private property and does not constitute a navigational hazard and has an approved Marine Sanitation Device as provided herein.
"Section 6. Any vessel which is connected to an approved sewer system shall be exempt from the provisions contained in Section 4 herein.
"Section 7. The following areas are designated as live aboard areas as provided hereinabove:
Key West Yacht Club
Berths at the City-owned docks located at Garrison Bight.
"Section 8. Should any person, firm or corporation, their agents, servants or employees, violate the terms and provisions of this Ordinance, such person, firm or corporation shall be deemed guilty of a misdemeanor and upon conviction thereof by a Court of competent jurisdiction, shall be fined in any sum not less than One Hundred Dollars nor more than Two Hundred Fifty Dollars.
"Section 9. Should any section, paragraph, clause or provision of this Ordinance be declared unconstitutional and void by a Court of competent jurisdiction, such decision shall in no wise affect the validity of the remaining parts save the part held unconstitutional and void and is inseparable from and indispensable to the operation of the remaining part."
We are not unmindful of the presumptions in favor of ordinances passed under the police powers of a jurisdiction; nor do we disparage the principle that the burden of overcoming this presumption falls heavily on the challenge, State v. Sawyer, 346 So.2d 1071 (Fla.3d DCA 1977), and the authority cited therein. Moreover, courts will not substitute their judgment as to the reasonableness of a particular rule or regulation where the reasonableness is "fairly debatable". See Lester v. City of St. Petersburg, 183 So.2d 589 (Fla.2d DCA 1966). However, where there has been an obvious abuse of police power and where the ordinance clearly appears to have no foundation *315 in reason or necessity, the courts will provide a remedy. City of Clearwater v. College Properties, Inc., 239 So.2d 515 (Fla.2d DCA 1970).
In this case, the ordinance makes it illegal to live aboard any vessel unless such vessel is moored or docked within the Key West Yacht Club or Garrison Bight, the public dock. There is no discernible relationship between this regulation and the health, welfare, or safety of the general populace. Therefore, the provisions of this statute which are unreasonable must be quashed. Because Sections 4 and 6 of the ordinance, which mandate that all vessels used for human habitation be equipped with an approved marine sanitation device, are distinct and severable from the remainder of the ordinance and because these two sections have separate and valid purposes, they retain their viability under the principles of Dade County v. Keyes, 141 So.2d 819 (Fla.3d DCA 1962) and in the spirit of the savings clause of the ordinance.
In light of our foregoing disposition of the issue concerning the validity of the ordinance, we need not reach the question of whether the trial court abused its discretion in directing verdicts against two of the plaintiffs who failed to appear for trial. The effect of any such verdict is mooted by our quashal of the ordinance.
Therefore, the ordinance is quashed in part, the judgment is reversed, and the constitutional stay writ previously entered is hereby dissolved.
NOTES
[1] There were two separate but consolidated lawsuits below with several plaintiffs in each case. The plaintiffs who sought relief in Circuit Court Case No. 77-234-CA-17 are not parties to this appeal.
[2] When the Key West Port and Transit Authority was first created by Ordinance 72-23, it was known as the Key West Transit Authority. Its title was subsequently changed by Ordinance 74-24.