Edward SAWYER, Jr.,
Petitioner-Appellant,

v.

Jack SANDSTROM, as Director, Department of Corrections and Rehabilitation, Dade County, Florida, Respondent-Appellee.

No. 79-2671.

United States Court of Appeals,
Fifth Circuit.

April 10, 1980.

---

6. We indicate nothing concerning the ultimate merits of any of the pending claims.

312

Elliot H. Scherker, Asst. Public Defender, Miami, Fla., for petitioner-appellant.

H. T. Smith, Asst. County Atty., Miami, Fla., for respondent-appellee.

Before GEE, FAY and VANCE, Circuit Judges.

FAY, Circuit Judge:

 Appellant Edward Sawyer, Jr. was found guilty of violating Dade County's loitering ordinance which provides:

For the purpose of this section "loitering" means the act of standing or remaining in or about any public street, public sidewalk, public overpass or public bridge, or other place specifically enumerated herein. A person commits the offense of loitering when he knowingly:

\* \* \* \* \* \*

(2) Loiters in any place with one or more persons knowing that a narcotic or dangerous drug, as defined in Sections 893.01 and 893.15, Florida Statutes, is being unlawfully used or possessed.

Code of Metropolitan Dade County, § 21–31.1(b)(2) (1974). Appellant, now in state custody,[1] comes before this court to appeal the denial of his petition for a writ of habeas corpus. He asks us to decide whether his mere knowing presence at the scene of a suspected crime can be classified as criminal conduct. In essence, appellant questions whether he can be punished for having the wrong kinds of friends and for being with them on a public street. Appellant attacks the constitutionality of the loitering ordinance under which he was convicted, arguing that the ordinance is overbroad and violates his first and fourteenth amendment rights. We agree with appellant's contentions. Holding the Dade County loitering ordinance unconstitutional, we reverse the district court's dismissal of appellant's petition for writ of habeas corpus.

I. The Facts and Proceedings

During the evening hours of October 9, 1975, officers of the City of Miami Police Department set up a stakeout to observe narcotics activity around a pool hall in downtown Miami. The pool hall under surveillance was known to the police as a place where narcotics were sold, both inside and outside. During the narcotics stakeout, appellant Sawyer was observed standing in front of the pool hall with a man known to the police as "Roach." Appellant was also seen with Howard Wilamenko and Reginald Washington. "Roach," Wilamenko, and Washington were all suspected by the police to be narcotics dealers.

The police observed approximately six drug transactions in front of the pool hall that night. In each drug transaction, an unidentified buyer would walk up to either "Roach," Wilamenko, or Washington and start conversing. The police observed each unidentified buyer pass money to the dealer, in return for which the dealer would pass a tinfoil packet[2] to the buyer. Appellant Sawyer stood next to each drug dealer while the dealer consummated the alleged narcotics sale. During one such sale, a female in an orange Volkswagon took the object that the dealer gave to her, put it up to her nose, sniffed it, closed it, and put the rest in her brassiere.

The police officers at the stakeout did not observe appellant participating in any of the suspected sales of narcotics. They initially arrested him for possession of drug paraphernalia,[3] but he was never prosecuted on this charge. Instead appellant was charged by information with loitering in a place where he "well knew that narcotics or other dangerous drugs" were being "unlawfully possessed, sold, or used" in vio-

1. The Circuit Court of the Eleventh Judicial Circuit of Florida has stayed execution of appellant's sixty-day sentence pending federal review of the conviction. Appellant is, however, in "custody" for purposes of a claim under the federal habeas corpus statute, 28 U.S.C. § 2254 (1976). *Hensley v. Municipal Court, San Jose-Milpitas Judicial District, Santa Clara County,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973).

2. One of the police officers testified that he knew from previous experience that tinfoil packets usually are used for decks of heroin, and that he had seen such packets at least fifty-five times.

3. A police officer testified that appellant Sawyer had hypodermic needles and syringes in his possession at the time of his arrest. Sawyer testified that he never possessed any syringes.

lation of section 21–31.1(b)(2) of the Code of Metropolitan Dade County (the loitering ordinance). Record, Exhibit I.

During his nonjury trial in county court on March 22, 1976, appellant testified that he resided in the vicinity of the pool hall, and that he was aware that this was a "heavy narcotics area." He testified that during the evening of October 9, 1975 he went to the pool hall where he met and played pool with Reginald Washington. Appellant said he was unaware of any narcotics transactions which might have been conducted by Reginald Washington, and he testified that he did not personally observe any such transactions that night. Notwithstanding his plea of innocence, the trial court found that appellant had been "in companionship or direct contact with" the persons who had been involved in the suspected drug transactions. Record, Exhibit VI, at 34. Appellant was found guilty of violating the Dade County loitering ordinance and was sentenced to sixty days incarceration, with thirty days of the sentence suspended.

The Circuit Court of the Eleventh Judicial Circuit of Florida subsequently reversed the trial court's judgment of conviction, finding the loitering ordinance to be "fatally (and facially) overbroad in that it proscribes innocent conduct which may not constitutionally be made the basis of a criminal penalty." Record, Exhibit X. The Third District Court of Appeal of Florida disagreed, however, and on petition of the State of Florida it quashed the circuit court order. In upholding the constitutionality of the ordinance and reinstating appellant's conviction and sentence, the state appellate court narrowed the definition of loitering to "imply some type of comradeship or companionship." *State v. Sawyer,* 346 So.2d 1071, 1075 (Fla.Dist.Ct.App.1977). The court noted that although the ordinance might be unconstitutionally applied in certain situations, this was not a ground for finding the ordinance itself unconstitutional. "Far from having an impermissibly

broad prophylactic ordinance, Dade County punishes only knowing association with persons possessing or using narcotics." *Id.* at 1075.

Appellant subsequently filed petitions for writs of certiorari in the Supreme Court of Florida and the United States Supreme Court; both petitions were denied.[4] Having exhausted his state remedies, appellant then filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Florida. The district court dismissed the petition, stating in its order of dismissal that "[t]he Dade County Ordinance not only proscribes an activity which its drafters perceived to be a breach of the peace, but also more clearly narrowed the offense of loitering to one who *knowingly* associates with one who is unlawfully possessing or using a narcotic or dangerous drug, thus giving unmistakeable [sic] notice to the offender." Record at 45. The court found the ordinance to be well defined and "unquestionably constitutional." Record at 46. Appellant Sawyer now seeks reversal of the district court's order of dismissal of his habeas petition. Because we find the loitering ordinance at issue before us to be impermissibly and unconstitutionally overbroad, we grant appellant the relief he seeks.

## II. The Construction of the Loitering Ordinance

The Dade County ordinance in question makes it a crime to knowingly loiter in any place with one or more persons knowing that a narcotic or dangerous drug is being unlawfully used or possessed. Code of Metropolitan Dade County § 21–31.1(b)(2). Appellant contends that the ordinance is unconstitutionally overbroad in violation of the first and fourteenth amendments because it punishes mere association with an individual known to be in possession of or engaged in the use of narcotics. The ordinance does not require, nor has it been construed to require, any active participation in a substantive narcotics offense. Al-

---

4. *State v. Sawyer,* 346 So.2d 1071 (Fla.Dist.Ct. App.), *cert. denied,* 353 So.2d 678 (Fla.1977);

*cert. denied,* 436 U.S. 914, 98 S.Ct. 2255, 56 L.Ed.2d 414 (1978).

though appellant concedes that the ordinance does bring within its scope activity which may constitutionally be punished, he points out that the broad sweep of the ordinance also punishes essentially innocent association in violation of first amendment associational rights.

In analyzing appellant's overbreadth claim, our first task is to determine if some sort of limiting construction has been placed on the challenged ordinance. *See Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973); *Gooding v. Wilson,* 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972). When considering a contention that a statute or ordinance is facially unconstitutional, it is necessary to proceed with caution; facial invalidity should not be declared unless the statute.or ordinance is not readily subject to narrowing construction by the state courts. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975).

In the instant case, the trial court found appellant guilty under the ordinance because he had been knowingly "in companionship or direct contact with" individuals involved in suspected drug transactions. The Third District Court of Appeal noted that the loitering ordinance "clearly has criminal intent (scienter) written into [it]. The intent here is the knowledge on the part of the person loitering that he has voluntarily associated with one who is unlawfully possessing or using a narcotic or dangerous drug." *State v. Sawyer,* 346 So.2d 1071, 1074 (Fla.Dist.Ct.App.1977). The appellate court emphasized that to be convicted under the ordinance "one must have *knowledge* of another's unlawful possession of narcotics. Moreover, the words 'loiters . . . with one or more persons' imply some type of comradeship or companionship." *Id.* at 1075 (emphasis in original).

In its order dismissing appellant's habeas corpus petition, the federal district court noted that the state court's narrowing construction of the loitering ordinance gave unmistakable notice to the offender. "This ordinance is not . . . 'a direction by a legislature to the police to arrest all suspicious persons.' It is rather, a narrowly defined statute that gives more than adequate notice." Record at 45–46. In placing its emphasis upon the clarity of definition in the ordinance, the district court misconceived appellant's claim. Clearly, the Dade County ordinance, as construed by the state court, could withstand a constitutional challenge on grounds of vagueness. However, the fact that an enactment provides adequate notice of the acts it prohibits does not absolve it of the vice of overbreadth.

> The objectionable quality of . . . overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.

*N.A.A.C.P. v. Button,* 371 U.S. 415, 432–33, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). In this case, the state court's narrowing construction of the loitering ordinance does not answer the charge of overbreadth. Appellant's constitutional claim has survived its first test; we now subject the claim to further analysis in accordance with well-established principles of constitutional law.

III. Striking The Constitutional Balance: The Freedom of the Individual vs. The Interest of the State

The United States Constitution grants to local governments broad discretion to control and regulate the activities of citizens; however, such controls and regulations cannot sweep so broadly as to infringe upon the constitutional and organic rights of the individual. "[A] governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *N. A. A. C. P. v. Alabama,* 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325 (1964).

The "protected freedom" involved in this case is the first amendment guarantee

of freedom of association. *See, e. g., Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). This right to freely associate is not limited to those associations which are "political in the customary sense" but includes those which "pertain to the social, legal, and economic benefit of the members." *Griswold v. Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965). "The rights of locomotion, freedom of movement, to go where one pleases, and to use the public streets in a way that does not interfere with the personal liberty of others" are implicit in the first and fourteenth amendments. *Bykofsky v. Borough of Middletown,* 401 F.Supp. 1242, 1254 (M.D.Pa.1975), *aff'd without opinion,* 535 F.2d 1245 (3d Cir.), *cert. denied,* 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976).

The first amendment thus limits the permissible scope of loitering laws; such an enactment can be upheld only if it proscribes conduct which threatens the public safety or constitutes a breach of the peace. *See Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); *State v. Ecker,* 311 So.2d 104 (Fla.), *cert. denied,* 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975). The Supreme Court has provided some guidance as to what constitutes a breach of the peace.

> The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others. No one would have the hardihood to suggest that the principle of freedom of speech sanctions incitement to riot or that religious liberty connotes the privilege to exhort others to physical attack upon those belonging to another sect. When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the state to prevent or punish is obvious.

*Cantwell v. Connecticut,* 310 U.S. 296, 308, 60 S.Ct. 900, 905, 84 L.Ed. 1213 (1940).

In the case at bar, the Florida appellate court defended the Dade County loitering ordinance by pointing out that

> it is universally known that possession of narcotics is a violation of the criminal laws of this State. *Possession being a criminal violation, it is also a breach of the peace.* If an ordinance proscribes loitering that threatens public safety or a breach of the peace, it can withstand constitutional attack.

*State v. Sawyer,* 346 So.2d 1071, 1073 (Fla. Dist.Ct.App.1977) (emphasis added). The *Sawyer* opinion suggests that the possession of narcotics constitutes a breach of the peace sufficient to justify some infringement of first amendment rights. We do not necessarily disagree with this conclusion, however, we find it inapposite to the facts before us. The appellant in this case was not charged with possessing narcotics, or with any other breach of the peace; his only "criminal" act was to *associate* with certain individuals, knowing that they were unlawfully using or possessing illegal drugs. Appellant has been convicted under the loitering ordinance for apparently innocent activity; his conviction clearly infringes on the free exercise of his associational rights.

An enactment which criminalizes ordinary associational conduct not constituting a breach of the peace runs afoul of the first amendment. *See Coates v. City of Cincinnati,* 402 U.S. 611, 615, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214 (1971) ("The First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be 'annoying' to some people.") The loitering ordinance before us punishes an individual not for his own criminal acts, but rather for his act of being in a public place and associating with individuals whom he knows to be engaged in criminal activity, *i. e.* drug use or possession. Both this court and the Supreme Court have recognized that under our system of justice punishment must be predicated only upon personal guilt.

In our jurisprudence guilt is personal, and when the imposition of punishment on a status or on conduct can only be justified by reference to the relationship of that status or conduct to other concededly criminal activity . . . that relationship must be sufficiently substantial to satisfy the concept of personal guilt in order to withstand attack under the Due Process Clause . . . .

*Scales v. United States,* 367 U.S. 203, 224–225, 81 S.Ct. 1469, 1484, 6 L.Ed.2d 782 (1961); *accord, St. Ann v. Palisi,* 495 F.2d 423, 425 (5th Cir. 1974).

*Scales v. United States,* quoted above, concerned the constitutionality of the Smith Act, 18 U.S.C. § 2385 (1976), which prohibits knowing membership in any organization advocating the overthrow of the government by force or violence. The statute was challenged on the ground that it imputed guilt by mere association, and therefore infringed on first amendment guarantees. Although the statute on its face punished only knowing membership, the Supreme Court found that mere knowledge of the criminal nature of an organization was an insufficient basis for conviction. Ruling that the statute could reach only *active* members "having also a guilty knowledge and intent," the Court noted that a conviction could not be based upon "what otherwise might be regarded as merely an expression of sympathy with the alleged criminal enterprise, unaccompanied by any significant action in its support or any commitment to undertake such action." *Scales v. United States,* 367 U.S. 203, 228, 81 S.Ct. 1469, 1486, 6 L.Ed.2d 782 (1961).

*Scales* thus teaches that knowing association with a group cannot be made a punishable act just because some of the group members are engaged in criminal conduct. In the instant case, however appellant was convicted solely on the basis of his "companionship or direct contact with" persons suspected of engaging in drug transactions; he was not charged with any active participation in any criminal act. The loitering ordinance rendered appellant's mere associational conduct criminal, based solely upon the suspected criminality of those with whom he publicly associated. In our opinion, this ordinance is unconstitutionally broad because it authorizes the punishment of constitutionally protected conduct. *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971).

We recognize that municipalities such as Dade County have a valid interest in limiting narcotics trafficking and use; presumably that is one of the purposes of the loitering ordinance before us. Of course, if the purpose of the ordinance is to nip crime in the bud by providing police with the means to arrest all suspicious persons, it is patently unconstitutional. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 169, 171, 92 S.Ct. 839, 847, 848, 31 L.Ed.2d 110 (1972). To the extent that the ordinance does have legitimate drug enforcement purposes, there exist alternative means of accomplishing those ends.[5]

Even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgment must be viewed in the light of less drastic means for achieving the same basic purpose.

*Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). A more artfully drawn ordinance would reach only those persons who are active participants in illegal narcotics transactions or who aid and abet the primary offender, without chilling the first amendment rights of persons engaged in essentially innocent

5. Counsel for appellee states that a proper construction of the ordinance requires a connection between the loitering individual and the drug transgression or contraband. He then argues that the drug dealer must be stripped of his lookout men, his accessories, and his sy-

ringe suppliers. Presumably such direct connections between a loiterer and an illegal drug or drug transgression would be encompassed by the existing laws pertaining to aiders, abettors, accessories, and conspirators. *See* n.6 *infra.*

associational conduct. *See, e. g., People v. Cressey*, 2 Cal.3d 836, 87 Cal.Rptr. 699, 708, 471 P.2d 19, 28 (1970) (accused must "act to aid, assist, or abet" the criminal violation); *Jolley v. City of Jacksonville*, 281 So.2d 901, 903 (Fla.Dist.Ct.App.1973) (enactment includes "element of participation or acting in concert with or abetting by lending approbation to the violation"). Even if a municipality failed to adopt a local ordinance regulating drug activity, the Florida Legislature has provided law enforcement officers with a vast array of tools with which to combat illegal narcotics activity.[6] The conduct which the state may punish without running afoul of the first amendment is more than adequately covered by these provisions.

IV. Conclusion

■ The legitimate purposes of section 21–31.1(b)(2) of the Dade County loitering ordinance can be achieved by a more narrowly drawn ordinance or by the application of existing statutory prohibitions. The ordinance's overly broad sweep is therefore unjustified by any compelling state interest. While the ultimate purpose of the ordinance may be acceptable and even laudatory, its overbreadth renders it unconstitutional on its face. "It is not permissible to enact a law which, in effect, spreads an all-inclusive net for the feet of everybody upon the chance that, while the innocent will surely be entangled in its meshes, some wrongdoers also may be caught." *Tyson & Brother v. Banton*, 273 U.S. 418, 443, 47 S.Ct. 426, 432, 71 L.Ed. 718 (1927).

Because we hold section 21–31.1(b)(2) of the Code of Metropolitan Dade County unconstitutional on its face, appellant, convicted under this ordinance, is entitled to habeas corpus relief. We reverse the district court's dismissal of appellant's petition for habeas corpus.

REVERSED.

---

**6.** Section 893.13(1)(a) of the Florida Statutes (1979) makes it a crime to "sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver" any of the controlled substances specified in Fla.Stat. § 893.03 (1979). Possession of a controlled substance without a valid prescription is also illegal; such possession is punishable whether it is active or constructive. Fla.Stat. § 893.13(1)(e) (1979).

One who aids or abets in any of these offenses is .punishable in the same manner as the individual who actually commits the offense. Fla. Stat. § 777.011 (1979). An individual who is an accessory after the fact or a conspirator is also subject to punishment. Fla.Stat. §§ 777.03, 777.04 (1979).