Robin R. Milligan filed a complaint, alleging that the members of the Albertville City Board of Education and its superintendent (Board) had terminated her employment in violation of certain of her rights. The trial court granted the Board's motion for summary judgment, finding that although Milligan's affidavits imply that her termination was for political or personal reasons, such a termination is only prohibited for non-probationary employees. Milligan appeals, and we reverse and remand.
At the outset we note that the standard of review for summary judgment is the same as that for granting the motion. We must determine whether a genuine issue of material fact exists and, if no such issue exists, whether the movant was entitled to a judgment as a matter of law. Olympia Produce Co.v. Associates Financial Services of Alabama, Inc.,584 So.2d 477 (Ala. 1991).
The record indicates that Milligan was employed as a teacher's aide from October 1988 to August 1991, that she was recommended for the job by a member of the Albertville City Board of Education, and that the board member had a close association with Milligan and her family. On July 18, 1991, the Board made the decision not to renew Milligan's position, and, upon returning from a vacation, Milligan learned from a newspaper article of her termination. The letter from the superintendent to Milligan, dated July 22, 1991, stated: "At the meeting of the Albertville City Board of Education held Thursday, July 18, 1991 the Board voted to terminate your employment effective August 9, 1991."
On December 13, 1991, Milligan filed suit, alleging, inter alia, that the Board terminated her for personal or political reasons. On May 6, 1992, the Board filed a motion for summary judgment, and the motion was granted in August. The trial court found that there was no genuine issue of material fact, that although Milligan's affidavit implies that she was terminated for political or personal reasons, such a termination is only prohibited for non-probationary employees, and that the evidence submitted by Milligan does not imply that the termination injured her prospects for future employment.
Milligan contends that she was fired for political or personal reasons and that even though she was a probationary employee, her dismissal was a "constitutionally impermissible patronage dismissal" and was in violation of her rights pursuant to the First and Fourteenth Amendments of the United States Constitution, in particular freedoms of speech and of association.
The record reveals that Milligan filed two affidavits in opposition to the motion for summary judgment. The affidavit of Thedford G. Watson, Jr., the board member with *Page 627 
whom Milligan claims to have a close association, states as follows:
 "The Superintendent and the members of the board of education knew of my friendship and association with Robin R. Milligan and her family. It was known that I recommended Robin for her job with the Board.
 "Because of my association with Robin her name was placed on a list to be terminated. Robin was placed there as a bargaining chip to get me to vote a certain way on a matter of board procedure. I inquired about why she was being terminated. There was no suggestion that she was not competently performing her job, only that there were no positions currently available. I was told by Robert Howard that she would not be terminated if I would vote to take up all of the non renewals or terminations as a group."
Watson stated that, although he agreed to vote as requested, he later changed his mind and at a subsequent meeting Milligan was "non renewed or terminated."
In her affidavit, Milligan stated that there had been no evaluation of her work and that she had performed her job competently.
The Board argues that Milligan failed to provide any evidence that her termination occurred because of her exercise of her First Amendment rights of freedom of speech or of association, or that the termination was anything other than the lawful dismissal of an "at will" employee.
Section 36-26-101, Ala. Code 1975, provides as follows:
 "(a) All employees as defined in section 36-26-100 shall be deemed employed on a probationary status for a period not to exceed three years from the date of his or her initial employment, or a lesser period which may be fixed by the employing authority.
". . . .
 "(c) At any time during the employee's probationary period, the employing authority may remove an employee by furnishing said employee written notification at least 15 days prior to the effective day of termination."
Section 36-26-102 regarding termination of a nonprobationary employee provides as follows:
 "Upon the completing by the employee of said probationary period, said employee shall be deemed employed on a nonprobationary status and said employee's employment shall thereafter not be terminated except for failure to perform his or her duties in a satisfactory manner, incompetency, neglect of duty, insubordination, immorality, justifiable decrease in jobs in the system, or other good and just causes; provided, however, such termination of employment shall not be made for political or personal reasons on the part of any party recommending or voting to approve said termination."
There is no dispute that Milligan was on probationary status; therefore, pursuant to § 36-26-101, the Board may remove Milligan as an employee simply by furnishing "written notification at least 15 days prior to the effective day of termination." An employee on non-probationary status, however, may be terminated only for the reasons stated in § 36-26-102
and may not be terminated for political or personal reasons. Because Milligan was on probationary status, even if her removal from employment was for political or personal reasons, such removal would not be prohibited under §§ 36-26-101 and -102.
However, although a nontenured teacher has no right to be re-employed, the teacher may be entitled to procedural due process if the nonrenewal stigmatizes her, or injures her prospects for future employment. Foster v. Blount County Boardof Education, 340 So.2d 751 (Ala. 1976). Additionally, the failure to renew a contract cannot be predicated on the exercise of constitutional rights. Id. See also Harris v.Florence City Board of Education, 568 So.2d 827 (Ala.Civ.App. 1990).
Regarding the employee's constitutionally protected freedom of speech, the threshold question to be determined is whether the speech at issue may be characterized as speech on a public concern. Roberts v. Joiner, 590 So.2d 195 (Ala. 1991). In the present *Page 628 
case Milligan does not claim that she made any statements of a public concern or that she was fired because of such a statement. In fact, Milligan testified at her deposition that her firing was not in retaliation for anything that she said.
In regard to the right to freedom of association, the United States Supreme Court has written:
 "Our decisions have referred to constitutionally protected 'freedom of association' in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties."
Roberts v. United States Jaycees, 468 U.S. 609, 617-18,104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984). We must determine whether Milligan's claims allege the violation of a constitutional right to association. In Wilson v. Taylor,733 F.2d 1539 (11th Cir. 1984), a police officer was fired for refusing to discontinue dating a woman whose father was a convicted felon. The Wilson court stated that freedom of association is no longer merely tied to the advancing of political beliefs. "By limiting the power of the states to interfere with freedom of speech and freedom of association, the Fourteenth Amendment protects all persons no matter what their views or means of expression. It is too late in the day to doubt that this freedom of association extends only to political or conventional associations and not to the social or the unorthodox." Bruns v. Pomerleau, 319 F. Supp. 58, 64-65
(D.Md. 1970); Wilson.
The Wilson court further stated that the freedom of association now includes more than associations for the purpose of advancing shared beliefs and, in fact, includes the right to simply meet with others. "More recent cases have properly recognized that the First Amendment also applies to social and personal associations, including those which do not purport to express and advocate ideas." McKenna v. Peekskill HousingAuthority, 497 F. Supp. 1217, 1221 (S.D.N.Y. 1980) (as quoted in Wilson, 733 F.2d at 1544).
Finally, the Wilson court stated:
 "We follow Sawyer [v. Sandstrom, 615 F.2d 311
(5th Cir. 1980),] and align ourselves with recent cases holding that the first amendment freedom of association applies not only to situations where an advancing of common beliefs occurs, but also to purely social and personal associations. . . . Where two individuals seek to associate with each other, without any evidence of promulgating and advancing political or religious beliefs, they are protected under the freedom of association provision.
 "It is the interaction, the association, which is protected. The protection does not come into play only when two or more individuals seek to distill the fruits of their relationship into a body of thought or into a political program. McKenna, 497 F. Supp. at 1221. A state violates the fourteenth amendment when it seeks to interfere with the social relationship of two or more people. . . . We further conclude that Wilson was fired for a reason infringing upon his constitutionally-protected freedom of association."
Wilson, 733 F.2d at 1544.
Just as the activity in Wilson was found to be protected, we hold that the association alleged by Milligan is a protected association and that there exists a genuine issue of material fact, making this action inappropriate for summary judgment. Therefore, the judgment is due to be reversed and the cause remanded.
We further quote, as guidance to the trial court, the following test for determining whether an individual has been fired for a reason infringing upon a constitutional right. *Page 629 
 "Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was 'a substantial factor' — or, to put it in other words, that it was a 'motivating factor' in the board's decision not to rehire him. Respondent having carried that burden, however, the district court should have gone on to determine whether the board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct."
Wilson, 733 F.2d at 1543 (quoting Mt. Healthy City SchoolDistrict Board of Education v. Doyle, 429 U.S. 274 at 287,97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)). Therefore, Milligan has the burden of showing that the conduct was a substantial or motivating factor in the Board's decision. The trial court should then determine whether the Board has shown that it would have reached the same decision absent the protected conduct.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur.