## CITY OF DETROIT *v.* BOWDEN.

1. MUNICIPAL CORPORATIONS—ORDINANCES—CONSTITUTIONAL LAW—PRESUMPTIONS.

> An ordinance, as a duly passed legislative act, is presumed constitutionally valid, and the burden is on one attacking it to show that it is unconstitutional.

2. CONSTITUTIONAL LAW—POLICE POWER—INNOCENT ACTS—PROHIBITION.

> A legislative body may make innocent acts unlawful, if, in its opinion, these acts should be regulated or prohibited for the health, safety, or welfare of the community, but an act which has no tendency to affect or endanger the public in connection with health, safety, morals, or general welfare, and which is entirely innocent in character, is not within the police power.

3. SAME—CRIMINAL LAW—STATUTE—VAGUENESS—INNOCENT ACT.

> Conviction under a statute so vague as to make an innocent act criminal cannot be sustained.

4. SAME—CRIMINAL LAW—STATUTE—VAGUENESS—DUE PROCESS.

> A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

5. EVIDENCE—PRESUMPTION—BURDEN OF GOING FORWARD WITH PROOF.

> The right to produce evidence or not, conferred on a defendant by the operation of a presumption created by an ordinance, is no substitute for the right not to produce evidence which defendant has in the absence of the presumption.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 37 Am Jur, Municipal Corporations §§ 155, 156.
[2] 37 Am Jur, Municipal Corporations §§ 155–157.
[3, 4] 21 Am Jur 2d, Criminal Law § 17.
[5, 8] 29 Am Jur 2d, Evidence §§ 9, 10, 12.
[6, 7] 29 Am Jur 2d, Evidence § 11.
[9] 37 Am Jur, Municipal Corporations §§ 155–157; 29 Am Jur 2d, Evidence § 10.
[10] 29 Am Jur 2d, Evidence §§ 10, 11.
[11] 42 Am Jur, Prostitution §§ 2, 4.

6. PROSTITUTION—PRESUMPTION—CONCLUSIVENESS.

An ordinance punishing one who, being a known prostitute or panderer, repeatedly stops or attempts to stop persons by waving creates, in effect, a conclusive presumption by defining a known prostitute or panderer as one who has been convicted of certain named offenses having to do with prostitution or pandering in the 2 years preceding arrest for present offense (Detroit Ordinance 39–1–52).

7. EVIDENCE—PRESUMPTION—ORDINANCES—CONSTITUTIONAL LAW.

An ordinance creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Federal Constitution (US Const, Am 14).

8. SAME—PRESUMPTIONS.

A presumption created by an ordinance is not valid if there is no rational connection between the fact proven and the ultimate fact presumed.

9. PROSTITUTION—PRESUMPTION—EVIDENCE.

Difficulty of proving ultimate fact that defendant was soliciting persons for purpose of fornication or prostitution does not justify presumption in ordinance that one convicted of prostitution within last 2 years is soliciting whenever she waves at persons passing by (Detroit Ordinance 39–1–52).

10. SAME—CONSTITUTIONAL LAW—DEFENSE—INNOCENT ACT.

It is not permissible to strip person of defense that waving at persons passing by was an innocent, lawful act because of her prior conviction of prostitution and possibility that waving was intended to solicit persons to fornication or prostitution (Detroit Ordinance 39–1–52).

11. SAME—ORDINANCE—CONSTITUTIONAL LAW.

Ordinance making solicitation to commit acts of fornication or prostitution an offense and providing that any person who is a known prostitute who stops or attempts to stop persons by waving or by other bodily gesture, is guilty of the offense, *held,* unconstitutional (Detroit Ordinance 39–1–52).

Appeal from traffic and ordinance division of Recorder's Court of Detroit; Wood (Andrew C.), J. Submitted Division 1 February 8, 1967, at Detroit. (Docket Nos. 1,821, 1,997.) Decided April 19, 1967. Leave to appeal denied July 25, 1967. See 379 Mich 772.

Judith Bowden was convicted of being a disorderly person on two separate charges under an ordinance of the City of Detroit. Defendant appeals. Reversed.

*Robert Reese,* Corporation Counsel, and *Robert D. McClear,* Assistant Corporation Counsel, for plaintiff.

*Nick Arvan,* for defendant.

*Maurice Kelman,* for American Civil Liberties Union of Michigan, as *amicus curiae.*

Lesinski, C. J.  Defendant Judith Bowden, who was granted leave to take a delayed appeal, seeks reversal of two convictions of having violated section 39–1–52[1] of the code of the city of Detroit. She was convicted in the traffic and ordinance division of the recorder's court for the city of Detroit September 1 and December 17, 1965, and the cases have been consolidated here because the issues and parties involved are identical.

---

[1] Ordinance Ch 39, art 1, § 52 of the city of Detroit as amended in 1965. "It shall be unlawful for any person to accost, solicit or invite another in any public place or in or from any building or vehicle by word, gesture or any other means to commit or afford an opportunity to commit fornication or prostitution or to do any other lewd immoral act.

"*It shall be unlawful for a known prostitute or panderer to repeatedly stop or attempt to stop any pedestrian or motor vehicle operator by hailing, whistling, waving of arms or any other bodily gesture in or upon any public sidewalk, street, alley, park or public place.*

"*Any person violating the provisions of this section shall be deemed a disorderly person and shall upon conviction be punished as herein provided. For purposes of this section 'a known prostitute or panderer' is any female or male who, within two years from date of arrest for violation of this section, has been convicted of prostitution, accosting and soliciting, receiving and admitting, aiding and abetting, maintaining and operating or pandering, as those crimes are defined by the laws of the State.*"  (The italicized portion is the amendment at issue here.)

According to the testimony, the defendant was arrested July 8, 1965, for violation of the ordinance set forth in the margin (footnote 1). The arresting officer observed the defendant, who was on the southwestern corner of Park and Charlotte streets in Detroit, wave to persons in three vehicles and shout at the occupant of one of them. None of these cars stopped. The officer testified that he made these observations from a distance of "one city block;" that he could not hear what she said; and that he did not know the defendant prior to the time he arrested her. Over the objection of defense counsel, another officer testified that he knew defendant as a "known prostitute." He stated that he was aware that she had pled guilty and been convicted of prostitution May 13, 1965. Defendant did not testify and her counsel objected to the introduction into evidence of her previous conviction.

Defense attorney moved for a dismissal or, in the alternative, a verdict of not guilty, either on the ground that the ordinance was constitutionally invalid, or assuming its validity, that there was insufficient evidence presented to warrant a conviction. These motions were denied and the defendant was found guilty. The trial judge also ruled that the arresting officer need not have knowledge of the past record in order to charge a violation of the ordinance, and that, since "known prostitute" was an element of the offense charged, this fact could be shown by other evidence.

The briefs filed by defendant and the American Civil Liberties Union of Michigan, which was granted leave to file a brief *amicus curiae,* are devoted, in large measure, to an attack on the constitutionality of the 1965 amendment to Detroit's "prostitutes and panderers ordinance." It is argued that the ordinance, as amended, violates in several respects

both the State and Federal due process clauses,[2] the privilege against self-incrimination,[3] the prohibitions against *ex post facto* legislation,[4] double jeopardy[5] and the equal protection clauses.[6] The arguments are buttressed with numerous citations from the Supreme Courts of Michigan and the United States.

The plaintiff does not endeavor to show us that the cases cited by the defendant are not germane or applicable by refuting them or by distinguishing them factually. Instead plaintiff virtually ignores defendant's arguments and authorities and contends that the ordinance is a valid exercise of the city's police power. Plaintiff cites the Bible and department of health statistics to show, by the former, the agelessness of the prostitution problem and, by the latter, the enormity of the related problem of venereal diseases in the city. Neither authority is here disputed. Whether they can be said to justify the ordinance is another question.

Of the many constitutional issues raised by defendant, plaintiff attempts to meet but one—the equal protection of the laws argument. To justify the classification set by the ordinance, the plaintiff cites directly only two United States Supreme Court decisions, neither of which is relevant.

In *De Veau* v. *Braisted* (1960), 363 US 144 (80 S Ct 1146, 4 L ed 2d 1109), the Supreme Court upheld a statute which, *inter alia,* made conviction of a felony a bar to holding office or being an agent in a waterfront labor organization. The Supreme Court said, at 158, 159, "Barring convicted felons from certain employments is a familiar legislative device to insure against corruption in specified, vital

---

[2] US Const, Am 14, § 1; Const 1963, art 1, § 17.
[3] US Const, Am 5; Const 1963, art 1, § 17.
[4] US Const, art 1, § 10; Const 1963, art 1, § 10.
[5] US Const, Am 5; Const 1963, art 1, § 15.
[6] US Const, Am 14, § 1; Const 1963, art 1, § 2.

areas." It is obvious, as the Court emphasized, that the statute was not a means of punishing exfelons, but rather a device to protect against corruption in an industry essential to the economic welfare of the nation. That statute is a far cry from the ordinance tested here.

In *McGowan* v. *Maryland* (1961), 366 US 420 (81 S Ct 1101, 1153, 1218, 6 L ed 2d 393), the Supreme Court refused to strike down Maryland's Sunday closing law. Mention of the subject matter before the Court in *McGowan* is sufficient to distinguish it.

We do not disparage the difficulties which beset a large metropolitan area and its law-enforcement agencies in coping with the problem which this ordinance seeks to alleviate; rather we proceed cautiously in evaluating any statute or ordinance which seeks to aid the meritorious efforts of those who are charged with our protection. But the ends do not justify the means, and the legislation must pass constitutional muster to warrant our approval, once it is questioned on such ground. As a duly passed legislative act the ordinance is presumed constitutionally valid. Those who seek to defeat it bear the burden of proving that, when tested by constitutional standards, careful judicial scrutiny will find that this presumption has been overcome.

Now that the disputed ordinance has been placed in its proper setting, we may embark upon an analysis of it. This ordinance makes it unlawful for a known prostitute or panderer to repeatedly stop or attempt to stop *any* pedestrian or motor vehicle by hailing, whistling, waving of arms or any other bodily gesture while such person is on any public sidewalk or street or in an alley, park or other public place. Further, it defines "known prostitute" as anyone who, within two years of arrest for violation of this section, has been convicted of prostitution or stated, related crimes. In a few sentences, it

makes it criminal for a person, once convicted of such a crime, to hail a taxi, greet a friend, or do any one of a multitude of innocent, legal acts.

The plaintiff's brief tells us that a legislative body may make innocent acts unlawful, if in the opinion of the legislature these acts should be regulated or prohibited for the health, welfare, and safety of the community. As authority for this statement, the plaintiff cites 16 Am Jur 2d, Constitutional Law, § 288, pp 560, 561. In answer to this, we call the plaintiff's attention to the last sentence of its quotation, which reads:

"However, an act which has no tendency to affect or endanger the public in connection with health, safety, morals, or general welfare, and which is entirely innocent in character, is not within the police power."

Further, we note one sentence from *Winters* v. *New York* (1948), 333 US 507, 520 (68 S Ct 665, 92 L ed 840),[7] which answers the plaintiff.

"Where a statute is so vague as to make criminal an innocent act, a conviction under it cannot be sustained." (Citation omitted.)

This quotation leads us to discuss two of the grounds relied on by the defendant which have been enunciated by courts in the past, when the constitutionality of legislation is challenged on a theory of deprivation of due process. Both were discussed by the defendant and the *amicus curiae* and both have recently provided the rationale for declaring a statute unconstitutional.[8]

---

[7] The Court found the language of a New York statute to be so vague and indefinite as to permit within the scope of its language the punishment of incidents fairly within the protection of the guarantee of free speech and therefore void on its face as contrary to the Fourteenth Amendment.

[8] In *United States* v. *Margeson* (ED Pa 1966), 259 F Supp 256, the Federal district court held that a New Jersey statute, which

The void for vagueness test has been employed to invalidate a variety of penal statutes over the past 36 years.[9]

In *Lanzetta* v. *New Jersey* (1939), 306 US 451 (59 S Ct 618, 83 L ed 888), a State statute made it a crime for a person not engaged in any lawful occupation, who has been previously convicted of a crime or disorderly conduct, to be a known member of a gang. The New Jersey court had previously upheld this legislation as a valid exercise of the police power,[10] just as the plaintiff urges us to hold in the case at bar. The Supreme Court of the United States held at 458 that:

"The challenged provision condemns no act or omission; the terms it employs to indicate what it purports to denounce are so vague, indefinite and uncertain that it must be condemned as repugnant to the due process clause of the Fourteenth Amendment."

The standards of certainty in statutes have been worded in the cases cited in footnote 9. We need

provided that any person who is apprehended and cannot give a good account of himself is a disorderly person, was insufficiently precise and found the statute void for vagueness under the due process clause of the Fourteenth Amendment. It further held the statute was constitutionally infirm because of a presumption built into it. It found no rational connection between failure to give a good account of oneself and presence in the State for an unlawful purpose.

[9] See *Stromberg* v. *California* (1931), 283 US 359 (51 S Ct 532, 75 L ed 1117, 73 ALR 1484) ("A statute which upon its face, and as authoritatively construed, is so vague and indefinite as to permit the punishment of the fair use of this opportunity [for free political discussion] is repugnant to the guarantee of liberty contained in the 14th Amendment.") ; *Winters* v. *New York* (1948), 333 US 507 (68 S Ct 665, 92 L ed 840) ; *Lanzetta* v. *New Jersey* (1939), 306 US 451 (59 S Ct 618, 83 L ed 888) ; and *Giaccio* v. *Pennsylvania* (1966), 382 US 399 (86 S Ct 518, 15 L ed 2d 447).

[10] The New Jersey court is quoted at 306 US 455, 456, as having said: "'If society cannot impose such taint of illegality upon the confederation of convicted criminals, who have no lawful occupation, under circumstances denoting   *   *   *   the pursuit of criminal objectives, it is helpless against one of the most menacing forms of evil activity.   *   *   *   The primary function of government   *   *   *   is to render security to its subjects. And any mischief menacing that security demands a remedy commensurate with the evil.'"

not restate them. We merely call the reader's attention to these sources and note the language particularly relevant to the instant case. From *Winters, supra,* at 515, 516:

"The vagueness may be from uncertainty in regard to persons within the scope of the act, * * * or in regard to the applicable tests to ascertain guilt."

From *Lanzetta, supra,* at 453:

"A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."

And finally from *Giaccio* v. *Pennsylvania* (1966), 382 US 399, 404 (86 S Ct 518, 15 L ed 2d 447):

"It would be difficult if not impossible for a person to prepare a defense against such general abstract charges as 'misconduct,' or 'reprehensible conduct.' "

We note that it would be equally difficult to prepare a defense to a charge under the Detroit ordinance.

As an introduction to our discussion of the possible constitutional infirmity arising here from an invalid presumption, we cite the Michigan case of *People* v. *Licavoli* (1933), 264 Mich 643.[11] The case in its entirety is valuable reading. At this point, we refer specifically to its discussion of presumption and burden of proof at 650:

"But it is said that defendants were at liberty to rebut the presumption. This but emphasizes the fact that if an accused does not go forward with

11 In *Licavoli,* the Court struck down a statutory provision that made proof of recent reputation for engaging in an illegal occupation or business *prima facie* evidence of being engaged in an illegal occupation or business.

the proofs the presumption stands, without more, as evidence that he is guilty."

At 652, the Court reminded the people that "the right to produce evidence or not, is no substitute for his right not to produce it." The same language applies with greater force to the ordinance under review. Once the plaintiff has produced evidence that the defendant was seen repeatedly waving on a public street and that she had been convicted for prostitution within the last two years, she is more than *presumed* guilty of violating the ordinance. She is guilty.

Although the ordinance does not speak of creating a presumption, its definition of a "known prostitute or panderer" is, in effect, the creation of a conclusive presumption. For that reason cases dealing with such presumptions are relevant here.

In *Manley* v. *Georgia* (1929), 279 US 1, 5, 6 (49 S Ct 215, 73 L ed 575), the Supreme Court of the United States detailed the distinctions between valid and invalid statutory presumptions saying, in part, at 6:

"A statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it violates the due process clause of the 14th Amendment. * * * Mere legislative fiat may not take the place of fact in the determination of issues involving life, liberty or property. 'It is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime.'" (Citations omitted.)

Earlier, the Supreme Court of the United States had declared an Alabama statute invalid in *Bailey* v. *Alabama* (1911), 219 US 219 (31 S Ct 145, 55 L ed 191).[12] The Court noted at 236 that by legislative action:

---

[12] An amendment to the statute provided in substance that the refusal or failure to perform the service contracted for, or to refund the money obtained, without just cause, should be *prima facie* evidence of intent to injure or defraud.

"He [the defendant] stood, stripped by the statute of the presumption of innocence, and exposed to conviction for fraud upon evidence only of breach of contract and failure to pay."

The "rational connection" test of *Tot* v. *United States* (1943), 319 US 463, 467, 468 (63 S Ct 1241, 87 L ed 1519), has often been quoted.[13] It was recently employed in *United States* v. *Romano* (1965), 382 US 136, 139 (86 S Ct 279, 15 L ed 2d 210), to declare a statutory inference in Federal legislation violative of the Fifth Amendment due process clause. Much of the language in *Tot, supra,* which struck down a congressionally manufactured presumption, applies with force to the fact situation of the instant case. We take particular notice of the following statement from *Tot, supra,* at 467:

"The Government seems to argue that there are two alternative tests of the validity of a presumption created by statute. The first is that there be a rational connection between the facts proved and the fact presumed; the second that of comparative convenience of producing evidence of the ultimate fact. We are of the opinion that these are not independent tests but that the first is controlling and the second but a corollary."

The ultimate issue in a violation of the ordinance is whether the accused was, in fact, soliciting when she waved. The plaintiff argues that it is difficult to produce evidence of street solicitation without the language which amended this ordinance. This difficulty of proof without the "conclusive presumption"

---

[13] A statutory presumption is not sustainable if there be "no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. * * * Where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts."

that one who has been convicted of such a crime within the last two years is a "known prostitute," will not justify the amendment. Neither will calling the proof of this conviction an element of the crime cure the constitutional infirmity. As it is not permissible to shift the burden of proof to the defendant, so it is also not permissible to strip her of all defense because of her prior conviction.[14] The amendment to the ordinance fails to meet the test of due process under both the Michigan and the United States Constitutions.

Since we decide that the ordinance as amended must fall on due process grounds, it is unnecessary for us to dwell at great length on other possible constitutional shortcomings inherent therein. Nonetheless there are valid arguments for striking it down on the ground that it violates the privilege against self-incrimination, which the Cleveland municipal court[15] employed recently to strike down an ordinance which punished the failure of "suspicious persons" to give a satisfactory account of themselves to police. The court said:

"This provision places the burden upon the citizen of justifying his presence on the public streets. Any citizen may desire to maintain his purpose for being upon the public streets a matter of privacy for business, personal, or family reasons.

"To require a citizen to reasonably and satisfactorily account for his presence upon the public streets offends the right to silence guaranteed by the Fifth Amendment as applied to the States through the Fourteenth Amendment to the Constitution of the United States."

---

[14] In *Heiner* v. *Donnan* (1932), 285 US 312, 329 (52 S Ct 358, 76 L ed 772, the court, in declaring unconstitutional a clause in the revenue act, said "This court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the 14th Amendment." (Citations omitted.)

[15] *City* v. *Forrest* (1/4/67), 35 United States Law Week 2443.

The Detroit ordinance can similarly be held to offend the right to silence. It does not permit *any* defense, for once it is shown that the accused committed the forbidden act of waving, or one of the other proscribed acts, and that she was previously convicted of a similar offense within the prescribed time period, the violation is proved.

Since the amended portion of the ordinance is constitutionally infirm, it must fall, and with it, defendant's convictions for its violation.

Reversed.

Burns and Quinn, JJ., concurred.