Anita Evyonne JOHNSON, Petitioner,

v.

Dale CARSON, Sheriff of Duval County, and City of Jacksonville, Respondents.

No. 81–1079–Civ–J–JHM.

United States District Court,
M.D. Florida,
Jacksonville Division.

March 8, 1983.

James T. Miller, Asst. Public Defender, Jacksonville, Fla., for petitioner, Anita Evyonne Johnson.

William Lee Allen, Asst. Counsel, Jacksonville, Fla., Barbara Butler, Daytona Beach, Fla., and Kathryn L. Sands, Asst. Attys. Gen., Jacksonville, Fla., for respondents, Dale Carson and City of Jacksonville.

### WRIT OF HABEAS CORPUS

JOHN H. MOORE, District Judge.

This cause is before the Court on the Report and Recommendation of the United States Magistrate, entered herein on June 22, 1982.

Petitioner was convicted for violating Municipal Ordinance § 330.107, of the City of Jacksonville, Florida, Loitering for the Purpose of Prostitution. The Judgment of Conviction was entered on April 13, 1981, by the Honorable John M. Marees, County Court, Division A, Fourth Judicial Circuit of Florida, Duval County, Jacksonville, Florida. Petitioner was sentenced to a 45-day term of imprisonment in the County Jail at Duval County, Florida, with credit for one day. On April 14, 1981, the Honorable John M. Marees entered an order staying execution of the sentence pending Petitioner's appeal in the State Courts and on October 28, 1981, Judge Marees entered an order staying execution of Petitioner's sentence pending appeal in the Federal Courts.

The Petition for Writ of Habeas Corpus filed herein on October 30, 1981, alleges that Petitioner is in unlawful custody because Municipal Ordinance § 330.107, City

---

of Jacksonville, violates the First and Fourteenth Amendments to the United States Constitution.

The Magistrate's report recommends that the Writ of Habeas Corpus be granted because Municipal Ordinance § 330.107 is unconstitutional on its face. Specifically, the Magistrate finds that the ordinance is overbroad in violation of the First Amendment to the United States Constitution.

Respondents filed their Objection to Report and Recommendation on July 2, 1982. This Court has conducted a *de novo* review of the entire record in this matter as required by 28 U.S.C. § 636. After doing so, the Court finds that Respondents' objections are without merit. This Court concurs in the Magistrate's finding that Municipal Ordinance § 330.107 is unconstitutional on its face because it is overly broad. The ordinance prohibits constitutionally-protected as well as unprotected conduct in violation of the first amendment to the United States Constitution. Consequently, the Report and Recommendation is adopted and confirmed and made a part hereof and in accordance therewith, it is

ORDERED AND ADJUDGED:

1. The Petition for Writ of Habeas Corpus is GRANTED; and

2. The Judgment of Conviction imposed upon Petitioner is hereby VACATED and set aside and Petitioner is released from her obligation to serve the sentence imposed upon her because of said conviction.

DONE AND ORDERED in Chambers at Jacksonville, Florida this 8 day of March, 1983.

APPENDIX

Magistrate's Report and Recommendation *

*VI. First Amendment*

Petitioner's first ground for relief, *i.e.,* that the ordinance violates the First Amendment, has several aspects. Petitioner alleges that the ordinance is overbroad, does not utilize the least intrusive means of

---

* Howard T. Snyder, Magistrate (Partial report).

preventing prostitution activities, chills and deters the exercise of free speech, assembly, and association, permits arbitrary and capricious law enforcement, and is vague. These allegations can be grouped into two main headings—overbreadth and vagueness.

Before examining those allegations, Respondents' argument that no first amendment rights are involved must be examined. Section 330.107 provides:

(a) It shall be unlawful and a class D offense for any person to *loiter in or near any thoroughfare, street, highway, or place open to the public* in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting, or procuring another to commit an act of prostitution, lewdness, or assignation.

(b) Among the circumstances which may be considered in determining whether this purpose is manifested are that such a person (1) is a known prostitute, pimp, or sodomist; (2) *repeatedly beckons to, stops or attempts to stop or engages passers-by in conversation;* or (3) *repeatedly stops or attempts to stop motor vehicle operators by hailing, waving of arms or any bodily gesture.*

(c) No arrest shall be made for a violation of this subsection unless the arresting officer first affords such person an *opportunity to explain his conduct,* and no one shall be convicted of violating subsection (a) if it appears at trial that the explanation given was true and disclosed a lawful purpose.

(d) For the purpose of subsections (a) and (b) the following words shall have the following meanings:

(1) *Prostitution* shall mean the giving or receiving of the body for sexual intercourse for hire or the giving or receiving of the body for licentious sexual intercourse without hire.

(2) *Lewdness* shall mean sodomy, cunnilingus fellation, masturbation or analingus.

(3) *Assignation* shall mean the making of any appointment or engagement for prostitution or lewdness or any act in furtherance of such appointment or engagement.

(4) *Known prostitute, pimp or sodomist* shall mean any person who, within one year previous to the date of arrest for violation of this section, has within the knowledge of the arresting officer been convicted of violating any ordinance of the City or law of Florida or any state defining and punishing acts of soliciting, committing or offering or agreeing to commit prostitution, lewdness, or assignation. [Emphasis added.][2]

The ordinance appears to prohibit various activities such as a "known prostitute" loitering on a street corner, anyone repeatedly engaging passers-by in conversation and anyone repeatedly attempting to stop cars by waving their arms. Thus, in the present case, as in *Sawyer:*

The "protected freedom" involved in this case is the first amendment guarantee of freedom of association. *See, e.g., Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). This right to freely associate is not limited to those associations which are "political in the customary sense" but includes those which "pertain to the social, legal, and economic benefit of the members." *Griswold v. Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965). *"The rights of locomotion, freedom of movement, to go where one pleases, and to use*

the public streets in a way that does not interfere with the personal liberty of others" are implicit in the first and fourteenth amendments. *Bykofsky v. Borough of Middletown,* 401 F.Supp. 1242, 1254 (M.D.Pa.1975), *aff'd without opinion,* 535 F.2d 1245 (3d Cir.), *cert. denied,* 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976). [Emphasis added.]

615 F.2d 311 at 315–16. The *Sawyer* court went on to conclude that even associating on the street corner is constitutionally protected. *See, Aladdin's Castle, Inc. v. City of Mesquite,* 630 F.2d 1029, 1041–42 (5th Cir.), *modified,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). Loitering, loafing, and habitually wandering at night are also constitutionally protected. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Since § 330.107 prohibits these rights in certain circumstances, the first amendment is involved in the present case. Although speech incident to soliciting for prostitution is not protected by the first amendment, *Morgan v. Detroit,* 389 F.Supp. 922, 927 (D.C.Mich.1975), § 330.107 does not appear to stop at prohibiting such speech. In fact, to violate § 330.107, a person need not actually solicit or speak to anyone. *See* Response to Order to Show Cause, page 11.

It should also be noted that since Petitioner has challenged the facial validity of the ordinance on first amendment grounds, it is irrelevant whether her conduct, which subjected her to arrest, could constitutionally be prohibited. *Broadrick v. Oklahoma,* 413 U.S. 601, 611–612, 93 S.Ct. 2908, 2915–2916, 37 L.Ed.2d 830 (1973); *Beckerman v.*

**2.** In the following cases the state courts found loitering for the purpose of prostitution statutes or ordinances similar to § 330.107 to be constitutional. Some of the state courts interpreted or placed limiting constructions on the ordinance or statutes. Other state courts summarily dismissed the constitutional challenges. *City of Akron v. Massey,* 56 Ohio Misc. 22, 381 N.E.2d 1362 (Mun.Ct. of Akron, Ohio 1978); *In the Matter of D.,* 27 Or.App. 861, 557 P.2d 687 (Or.Ct.App.1976), app. dismissed, 434 U.S. 914, 98 S.Ct. 385, 54 L.Ed.2d 271; *Lambert v. City of Atlanta,* 242 Ga. 645, 250 S.E.2d 456 (Ga. 1978); *City of Seattle v. Jones,* 79 Wash.2d 626, 488 P.2d 750 (Wash.1971); *People v.*

*Smith,* 44 N.Y.2d 613, 407 N.Y.S.2d 462, 378 N.E.2d 1032 (N.Y.Ct.App.1978); *Short v. City of Birmingham,* 393 So.2d 518 (Ala.Ct.Cr.App. 1981).

Other state courts have found similar ordinances to be unconstitutional. *Profit v. City of Tulsa,* 617 P.2d 250 (Okl.Cr.App.1980); *Brown v. Municipality of Anchorage,* 584 P.2d 35 (Alaska 1978); *City of Detroit v. Bowden,* 6 Mich.App. 514, 149 N.W.2d 771 (Mich.Ct.App. 1967).

No federal decision construing the constitutionality of a loitering for the purpose of prostitution ordinance similar to the Jacksonville ordinance has been located.

*City of Tupelo, Mississippi,* 664 F.2d 502, 506–07 (5th Cir.1981).

· A. *Overbreadth*

An ordinance is overbroad when it seeks to prohibit constitutionally protected as well as unprotected conduct. *Grand Faloon Tavern v. Wicker,* 670 F.2d 943, 946 (11th Cir.1982). In *Broadrick, supra,* the Supreme Court stated:

It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. *Herndon v. Lowry,* 301 U.S. 242, 258 [57 S.Ct. 732, 739, 81 L.Ed. 1066] (1937); *Shelton v. Tucker,* 364 U.S. 479, 488 [81 S.Ct. 247, 252, 5 L.Ed.2d 231] (1960); *Grayned v. City of Rockford,* 408 U.S. [104], at 116–117 [92 S.Ct. 2294, 2303–2304, 33 L.Ed.2d 222].

... Overbreadth attacks have also been allowed where the Court thought rights of association were ensnared in statutes which, by their broad sweep, might result in burdening innocent associations. *See Keyishian v. Board of Regents,* 385 U.S. 589 [87 S.Ct. 675, 17 L.Ed.2d 629] (1967); *United States v. Robel,* 389 U.S. 258 [88 S.Ct. 419, 19 L.Ed.2d 508] (1967); *Aptheker v. Secretary of State,* 378 U.S. 500 [84 S.Ct. 1659, 12 L.Ed.2d 992] (1964); *Shelton v. Tucker, supra.*

413 U.S. at 611–612, 93 S.Ct. at 2915–2916.

The Court went on to note that the application of the overbreadth doctrine to invalidate a law is "strong medicine." *Id.,* at 613, 93 S.Ct. at 2916. As such, it should be used "sparingly" and as a "last resort," especially when "the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." *Id.,* at 613, 615, 93 S.Ct. at 2916, 2917. *See also, Grand Faloon Tavern,* 670 F.2d at 946.

Thus, the Jacksonville ordinance will be held unconstitutionally overbroad "only if a limiting construction could not readily be placed on the challenged section, *Dombrowski v. Pfister,* 380 U.S. 479, 491, 85 S.Ct. 1116, 1123, 14 L.Ed.2d 22 (1965), and if the overbreadth of the challenged provision is both real and substantial. *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2918." *Reeves v. McConn,* 631 F.2d 377, 383 (5th Cir.1980). *See also, Beckerman, supra; Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975); *Johnson v. City of Opelousas,* 658 F.2d 1065, 1072 (5th Cir.1981).

Accordingly, in analyzing the overbreadth claim, the first inquiry is whether a limiting construction has been placed on the ordinance. *Sawyer, supra.* Only the state courts can supply the narrowing construction. *Gooding v. Wilson,* 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972). Therefore, it is necessary to look to the state court decisions interpreting the ordinance.

The circuit court did not construe the ordinance when it decided Petitioner's appeal. Instead, it referred to the decisions in *Brown v. State, supra,* and *Leonard v. State, supra.* In both of those cases, the court stated that the ordinance requires proof of two elements: "(1) the defendant must *loiter* in or near a street or place open to the public, and (2) the *behavior of the defendant must manifest the purpose* of inducing, enticing, soliciting or procuring another to commit an act of prostitution." [Emphasis added.] The court referred to the circumstances in § 330.107(b) as providing evidence of the second element. As to § 330.107(c), the court stated, "[i]n addition, the arresting officer must first give the person an opportunity to explain his conduct and the court *may* consider the truthfulness of the explanation." [Emphasis added.]

For the most part, the state court did not limit the scope of the ordinance. In fact, by stating that the trial court *may* consider the truthfulness of the defendant's explanation, the court may have somewhat broadened § 330.107(c). Since the state court did not construe the ordinance "at variance with the apparent plain import of its language," *Coates v. City of Cincinnati,* 402 U.S. 611, 612, 614, 91 S.Ct. 1686, 1687, 1688, 29 L.Ed.2d 214 (1971), the words of the ordinance itself control.

The next step in analyzing the overbreadth argument is to determine whether the deterrent effect of the ordinance is real and substantial. *Erznoznik,* 422 U.S. at 217, 95 S.Ct. at 2276. The first element of the offense of loitering for the purpose of prostitution is that a person is loitering. The Supreme Court has discussed the virtues of loitering. *Papachristou, supra.* If loitering in a public place was the only element of the offense, the ordinance would be unconstitutional. However, the ordinance contains a second element. The person loitering must manifest the purpose of prostitution. Prostitution and prostitution-related activities are not constitutionally protected. The difficulty with the ordinance arises in the manner in which the police officers and the courts can find that the person has such a purpose. As noted, *supra,* the manifestation of the purpose of prostitution may be found, according to the ordinance, when the person loitering "is a known prostitute, pimp or sodomist". Likewise, the purpose is manifested when the loitering individual "repeatedly beckons to, stops or attempts to stop or engages passersby in conversation" or "repeatedly stops or attempts to stop motor vehicle operators by hailing, waiving of arms or any bodily gesture." Thus, pursuant to § 330.107(b), a person convicted of a prostitution related crime within the previous year can be arrested for merely loitering in a public place. In fact, as indicated by Appendix I of Petitioner's Supplement to Motion for Expedited Hearing, such persons have been arrested and charged with loitering for the purpose of prostitution for hitchhiking (see arrest report of Teresa Dunsenbury), for get-ting in a car with another person (see arrest report of Tony Mathis), for walking up to a van (see arrest report of Cynthia Saxton), and for waving at passing vehicles (see Petitioner's first arrest report, copy of which is included in Record—Appendix of Response to Order to Show Cause). Other activities that could lead to arrest pursuant to § 330.107 include a known prostitute window shopping, standing on a street corner waiting for a bus, or spending time idly. *See Brown v. Municipality of Anchorage,* 584 P.2d 35 (Alaska 1978); *City of Detroit v. Bowden,* 6 Mich.App. 514, 149 N.W.2d 771 (1971). Also, anyone standing on the street corner repeatedly talking to passers-by, even if they are old friends, could be violating the ordinance. Even if the person does not say one word regarding solicitation, such a purpose can be found from the circumstances in § 330.107(b). *See* Response to Order to Show Cause, page 11. Thus the circumstances enumerated in the Jacksonville ordinance which permit the finding that a loitering individual is manifesting the prohibited conduct forces persons to either curb their freedom of expression and association or face the risk of arrest.

The safeguard contained in § 330.107(c) does not save the ordinance from the overbreadth attack. That section requires the arresting officer to give the arrestee an opportunity to explain his or her conduct. However, the officer is not required to accept the explanation or even to give it any weight. Once the person has been given an *opportunity* to explain, he or she may be arrested. The individual may or may not elect to speak to the police. If an individual opts to say nothing, this silence cannot enhance the basis for arrest.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court authorized police officers to stop persons and ask questions for investigative purposes. However, as stated by Mr. Justice White in his concurring opinion, "the person stopped is not obliged to answer, answers may not be compelled, and *refusal to answer furnishes no basis for an arrest,* although it may alert the officer to the need

for continued observation." [Emphasis added.] *Id.,* at 34, 88 S.Ct. at 1886. *See also, Lawson v. Kolender,* 658 F.2d 1362 (9th Cir.1981).

Section 330.107(c) further provides that there can be no conviction if the explanation given to the police is truthful and discloses a lawful purpose. As noted, *supra,* the Florida courts have interpreted this provision to mean that "the court *may* consider the truthfulness of the explanation." (Emphasis added.)

Even if a person explains his or her conduct and the trial court ultimately believes the explanation and a lawful purpose is disclosed, the person's first amendment rights have, nonetheless, been chilled by the arrest. In *Papachristou,* the Jacksonville ordinance made it unlawful for certain types of persons to wander or stroll "around from place to place without any lawful purpose or object." The Supreme Court stated that "[t]he qualification 'without any lawful purpose or object' may be a trap for innocent acts." 405 U.S. at 164, 92 S.Ct. at 844. The Court went on to note that, " '[i]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.' *United States v. Reese,* 92 U.S. 214, 221 [23 L.Ed. 563]." 405 U.S. at 165, 92 S.Ct. at 845. *See also, Ricks v. District of Columbia,* 414 F.2d 1097, 1104–1105 (D.C. Cir.1968).

Similarly, in the present case, the possibility of arrest deters the free exercise of first amendment rights. Thus, the right to explain provision in the ordinance is not an adequate safeguard to protect the first amendment rights involved.

Nevertheless, the Respondent argues that the ordinance is necessary to serve the government's interests in preventing prostitution and preventing persons from harassing others on the streets. However, the ordinance is not narrowly tailored to meet those interests. Less intrusive alternatives are available. According to the Supreme Court:

[E]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgment must be viewed in the light of *less drastic means* for achieving the same basic purpose. [Emphasis added; footnotes omitted.]

*Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). *See also, Sawyer,* 615 F.2d at 317–318; *Aladdin's Castle, Inc.,* 630 F.2d at 1038 n. 13; *Johnson,* 658 F.2d at 1071.

In the Response to Order to Show Cause, Respondent stated at page 11, "[c]learly, prostitution, lewdness and assignation are activities which threaten the public safety, peace or order. It is thus within the police power of a municipality to proscribe conduct that has as its purpose the completed act, that is the actual solicitation."

The answer to this argument can be found in a statement made by the court in *Farber v. Rochford,* 407 F.Supp. 529, 534 (N.D.Ill.1975): "A statute that penalizes actual solicitation for prostitution, . . . would not be unconstitutional on these grounds. But this type of ordinance seeks a shortcut, and shortcuts cannot trespass across constitutional rights . . . ."

Similarly, the *Papachristou* Court stated:

It would be in the highest degree unfortunate if in any part of the country those who are responsible for setting in motion the criminal law should entertain, connive at or coquette with the idea that in a case where there is not enough evidence to charge the prisoner with an attempt to commit a crime, the prosecution may, nevertheless, on such insufficient evidence, succeed in obtaining and upholding a conviction under the Vagrancy Act, 1824.

405 U.S. at 170, 92 S.Ct. at 847, *quoting, Fredrick Dean,* 18 Crim.App. 133, 134 (1924). The Court added that an ordinance which attempts to nip crime in the bud cannot be squared with constitutional stan-

dards. 405 U.S. at 171, 92 S.Ct. at 848. *See also, Sawyer,* 615 F.2d at 317; *United States ex rel. Newsome v. Malcolm,* 492 F.2d 1166, 1173 (2nd Cir.), *aff'd sub nom., Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975).

If, as the Florida Circuit Court stated in *Brown,* § 330.107 "proscribes solicitation for prostitution," a less intrusive alternative is already available in Florida. Chapter 796, Fla.Stat. (1981), provides numerous ways of reaching such activities without chilling the first amendment rights of persons engaged in essentially innocent activities. *See, Sawyer* 615 F.2d at 317–18. Also, the rights of persons walking down the street can be protected through the enforcement of various Florida Statutes, such as § 877.03, Fla.Stat. (1981) (Breach of peace; disorderly conduct).

Based upon the foregoing discussion, City of Jacksonville Municipal Code § 330.107 is unconstitutionally overbroad. In view of that determination, it is not necessary to reach the issues of whether it is void for vagueness and whether it violates the due process and equal protection clauses. However, without deciding, these arguments shall be examined in order to point out further difficulties with the ordinance.

### B. Vagueness

The vagueness doctrine has been used to invalidate ordinances that do not clearly delineate what is prohibited. In *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the Supreme Court discussed the three reasons to hold a law void for vagueness. The Court stated:

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked." (Footnotes omitted.)

*Id.,* at 108–109, 92 S.Ct., at 2298–2299. *See also, Papachristou, supra; Aladdin's Castle, supra; Lawson, supra.*

Florida courts construe § 330.107 to include two elements—loitering and behavior manifesting a purpose related to prostitution. The ordinance goes on to specify what conduct satisfies the second element. Thus, it is arguable that the ordinance is specific in what it proscribes. But can it be said with certainty that a person convicted in any state within the past year of a prostitution-related offense would know that he could be arrested under § 330.107 for merely wandering aimlessly? Would a political candidate, a motorist in distress, or a member of a religious group realize that repeatedly waving to cars passing by could subject him or her to arrest?

The right to explain provision in § 330.-107(c) is also troublesome. The ordinance does not give police officers any standards by which to evaluate the explanation. Nor does it specify what kind of explanation is acceptable. *See Ricks,* 414 F.2d at 1104–05. A known prostitute standing on a street corner waiting for a bus could be required, at the unfettered discretion of a police officer, to explain her conduct to the officer's satisfaction at the risk of being arrested. *See Lawson,* 658 F.2d at 1369.

In discussing the District of Columbia vagrancy statute, which required the arrestee to give "a good account of himself," the *Ricks* court stated:

We discern no significant difference from a constitutional standpoint between a law licensing one's presence on a public street upon a police officer's favorable judgment and one conditioning it upon the officer's satisfaction with the explanation as to why the person is there.

414 F.2d at 1105. Both such laws would be unconstitutional according to the *Ricks* court.

In vetoing a District of Columbia vagrancy law, President Roosevelt once stated:

"It would hardly be a satisfactory answer to say that the sound judgment and decisions of the police and prosecuting officers must be trusted to invoke the law only in proper cases. The law itself should be so drawn as not to make it applicable to cases which obviously should not be comprised within its terms." H.R. Doc. No. 392, 77th Cong., 1st Sess.

*Papachristou,* 405 U.S. at 167 n. 10, 92 S.Ct. at 846 n. 10. Could not this also be said about the Jacksonville ordinance?